Good morning, Your Honors. Elizabeth Bossart appearing on behalf of the appellate Dahl, Roger Dahl. And I also would like to reserve three minutes for rebuttal, if that's okay with you. Three minutes. As you probably already know, this case has many undisputed facts. It's undisputed that my client entered into a contract with Sun Microstamping Incorporated and that there was a sale of assets from Sun Microstamping Incorporated to Sun Microstamping Technologies. The issue we have here is whether there is success or liability in the sale of assets from Sun Microstamping Incorporated to Sun Microstamping Technologies. And we implore that there is. The purpose of the traditional corporate law rule is to protect creditors. It's to stop companies from cherry-picking liabilities in situations where an asset purchase transaction is merely a merger, a consolidation, or a continuation of the business. And that's what we have here. Here we have assets of only $300,000, we have cash of only $300,000 transferred in payment, and then there was an acceptance of liabilities for a total of $5 million of purchase. We implore that that was not sufficient consideration. Well, the reality is that Fleet Bank was, in effect, the seller. And Fleet Bank thought this was all adequate. Right, but Fleet... Whatever debt it had. And even if you're correct that the debt wasn't $14 million, but rather was in the $6 million range, still is adequate to Fleet. But Fleet was an interested party in this transaction. Well, sure. It wanted to get as much of its money back as it could. I mean, that's about as interested as you can get. And the more interested it is, the more reliable its estimation of what reasonable consideration is. However, Fleet wasn't the only creditor. There were many liabilities that were cherry-picked out of the transaction. You don't have standing to worry about those. I mean, the point is, was there adequate consideration, which is a requisite to be found? Well, here I would implore that the purpose of the traditional corporate law rule is to make sure that there's adequate consideration. And the reason you need adequate consideration is so that you don't leave a creditor in the dark that has been left out of the transfer. For example, here, where there was only, there's no creditor here. You're not a creditor. You had a contract right and no debt owing to you. I mean, what you're complaining about, I take it, is that you lost a prospective opportunity of making, continuing to get commissions forever. Right. And if there had been adequate consideration, then my client would have a remedy of going after Sun Stamping Incorporated. But that's not what happened here, where there was inadequate consideration and that company was dissolved completely. So the whole purpose of requiring adequate consideration is to avoid this particular type of situation. But even under your theory, if it was 6.8 million, why wouldn't Fleet Bank have an incentive to get at least that much more? Instead of that, it took the 5 million because, as Judge Weinberg said, that's all they thought they could get out of it. What we have, the problem we have in the transaction is not only do we have Fleet on one side determining a creditor, determining what the sale price is going to be. You also have on the other side interested individuals who are part of the initial company and that became officers of the new company. I mean, they also, they wanted to get as low a price as possible. And you have two entities on both sides trying to get as low a price as possible. I mean, Fleet on one side wants to just get as many of its liabilities taken care of. But, I mean, in the end you have a company who has 240 employees that it kept and continued to keep. You have all of the assets being used, all of the accounts, part of which my client helped to generate, being used to create funds. And the liabilities themselves aren't the only assets. The assets of the goodwill of the business and the continuation of the business is completely disregarded in this transaction because you have a creditor who didn't have an interest in that aspect of the business determining the price of the transaction. And at very least that's an argument that doesn't make a great deal of sense to me as a practical matter because Fleet had a total interest in getting as much money as it possibly could. So it could evaluate goodwill, it could evaluate intangible assets, it could evaluate what it had its security interest in, which was tangible assets, and try to smoke out of it as much as possible. I mean, it had no incentive at all to lowball. It maybe didn't have a straight incentive, but it had to lowball, but it had an incentive to avoid the alternative, which is the company being sold and liquidated, where perhaps its liabilities wouldn't be dealt with. So it has an incentive to take whatever it can get and not an incentive to create valuable consideration, and that's the problem we have with having interested parties on both sides of the transaction. And that's why this rule exists to disallow this cherry-picking of liabilities. I mean, we have excluded liabilities across the board that with no recourse, and granted, I don't have standing, as you've mentioned, on that, but it's just another example that it's enough to at least take it to the jury and have a reasonable jury determine whether it was adequate consideration. We have liabilities to, if you look on the plaintiff's Volume 1 of the Excerpts of Transfers Record, page 29, and you have the asset purchase agreement, all these liabilities to other individuals, employees were cherry-picked out, the same as my contract, the contract of my client was cherry-picked out. And then the company continued to benefit from this contract. If you want to save me three minutes. Yes, Your Honor. Good morning. Howden Fraser for ES Investments, LLC, DBA, Sun Microstamping Technologies. As Your Honors know, we are here on an appeal from the granting of summary judgment. And our task is to look at the record and see if there is any evidence that would support a reasonable inference that one of the exceptions to the normal rule, the liabilities don't follow the sale of assets, would apply here. Well, Sun Tech has certainly benefited from the services Dahl provided, hasn't it? Of course. Yes. Just like they benefited from getting employees that were trained, getting machinery that was in place, yes, that was their motivation to buy the assets, including intangible assets. But as Your Honors know, the asset purchase agreement is explicit that they did not assume the liability on the contracts with Mr. Dahl. So the question then, as I read it under the case law, is that our inquiry is limited to was the adequate consideration paid for the assets? If not, an exception would apply. If adequate consideration was paid, the trial court was correct. I have to admit to some frustration because there's no doubt that Fleet Bank was owed over $14 million. And the argument developed in the trial court resulted from opposing counsel's misreading of a financial statement, which we then put in a declaration to correct. Sun was underwater to the tune of over $14 million, just to its senior secured creditor. So my people, Mr. Clark and Mr. — well, Mr. Clark was the leader, came up with their offer of $5 million. And we put into record how they arrived at that. That was their best estimate of, one, what Fleet Bank could reasonably get, and, two, what my clients could finance. Now, where the argument comes from that Fleet Bank wanted to get as little money as possible, I don't know. I don't understand it. I don't think the court understood it. But I can't think of a better test for fair consideration than to have the sale price negotiated by a financial institution, sophisticated lender, and they got $5 million because that was what they thought was the best they could do. So it was a fair, arm's-length negotiation, and on the lender's side, obviously, they were extremely interested. Their motivation, obviously, was to get every dollar they could. So I just don't see anywhere in the record any evidence that would raise an inference that there was some conspiracy here or wrong done. My people made a good-faith offer. Fleet Bank accepted it. They weren't out to do anything but get the most consideration they could. If the court has any questions, I'd be happy to address them. Thank you, counsel. Thank you. Thank you. Counsel, why do you think Fleet Bank would have approved $5 million if they could have gotten $6 million somewhere? I'm not saying they could have. I think Fleet Bank, unlike the way that it was characterized by counsel here, I didn't state that Fleet Bank wanted to have as little money as possible, but they had an interest in avoiding the alternative, which is a liquidation of the assets. And it's this very situation that the corporate rule exists. We have two exceptions where there's no successful liability. The continuation of business and we have the work and basically what we're looking at is whether there was adequate consideration. But the continuation of business in itself stands alone. And here we have that. We have the business continuing in its format, and we don't need to show that there was any kind of fraud on the part. I mean, the fact that there was an interested transaction is just inference that can be made that there was perhaps a situation where there wasn't adequate consideration. And then there's also the situation where you have the company dissolving completely and you have liabilities cherry-picked out. And, you know, there was apparently there's enough business at some point to have $14 million in debt or $6 million in debt. But this business continues. And the business continues with the benefit of the business being established. If the companies were supposed to – if these individuals wanted to start this business in the beginning, it would take considerable more investment we would implore than $5 million in debt or $4.7 million in debt and $300,000 in cash. And then essentially we feel that there's enough information at least to infer and to take to a jury and not to cut my client's rights out in summary judgment. And a reasonable jury could look at this situation and say, hey, there was perhaps a continuation of the business. Perhaps this isn't a fair valuation. And this is – all that I'm arguing here is that the client should have the opportunity to take that to a jury and have the jury decide and not have it cut off right up front in a summary judgment motion. Because there are some issues of whether, you know, $5 million in debt and an interested transaction where all of the business is continuing and all the benefits of the business is continuing, whether that would fall under the exception.  Thank you. The case is adjourned. It will be submitted.
judges: D.W. Nelson, Reinhardt, Rymer